IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

|  |  |  |
|---|---|---|
| Michael E. Reed, | ) | |
| | ) | C.A. No. 1:09-1744-MBS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| Aiken County, Ronnie Young and Clay | ) | |
| Killian, in their individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Michael E. Reed filed the within action on June 30, 2009 against Aiken County, South Carolina ("the County"), and Ronnie Young ("Young") and Clay Killian ("Killian"), in their individual capacities.  Plaintiff alleges claims for 1) violation of his First Amendment rights as to the County; and 2) civil conspiracy as to Killian and Young ("collectively the "Individual Defendants").  Compl. ¶¶ 12-18.  This case is before the court on the Defendants' Motion for Summary Judgment, which was filed on June 1, 2010.  On July 16, 2010, Plaintiff responded.  On August 6, 2010, Defendants replied.

## FACTS

The facts in the light most favorable to Plaintiff are as follow.  Plaintiff was hired by Killian in 2002 to be the County tax assessor.  Pl. Dep. 10:20-25.  As the tax assessor, Plaintiff was "responsible for making sure that the tax rolls [were] accurate and giv[ing] them to the Auditor so [he or she] [could] create the[] real property tax bills."  Pl. Dep. 11:3-5.  The tax assessor "oversees the valuation of all the properties that are under the County's jurisdiction."  Pl. Dep. 11:6-7.  Plaintiff managed the valuation of over six billion dollars in property value and generated approximately four million dollars in tax revenue for the county.  Pl. Dep. 11:13-16.  Plaintiff developed a budget of

approximately $1.2 million. Pl. Dep. 16:5-18. Plaintiff dealt with appeals of decisions made by the tax assessor's office. Pl. Dep. 18:8-22.

At the beginning of his employment as tax assessor, Plaintiff had a "[v]ery close" working relationship with Killian, who was the County's administrator during the relevant period. Pl. Dep. 20:19-22. Plaintiff stated at deposition that he "trusted [Killian] very much" and that they had a "very open relationship." Pl. Dep. 20:24-25. Killian testified that Plaintiff's "performance appraisals were always good." Killian Dep. 18:2-5.

In 2002, Plaintiff had a problem with Kevin Ward ("Ward"), an appraiser, because he was not appraising property correctly. Pl. Dep. 21:13-20. Plaintiff took this issue to Killian and Dorothy Simmons ("Simmons"), the County Human Resources Director, and Ward was suspended for ten days. *Id.* However, after Ward returned to work, Plaintiff continued to receive reports from staff that Ward was not "following procedures." Pl. Dep. 21:21-23. When Plaintiff reported these problems to Killian, Killian indicated he would get involved. Pl. Dep. 21:24-22:2. However, nothing was ever done about Ward. Pl. Dep. 21:24-22:4. In late 2006, Killian told Plaintiff that "the reason nothing was happening with [Ward] was because there was a council person concerned about his welfare. . . ." Pl. Dep. 23:19-21.

In early 2007, Plaintiff received a complaint that Ward had assessed a property owner's taxes incorrectly. Pl. Dep. 24:18-25. Plaintiff brought the issue to Killian, and they again discussed that someone on the County Council was protecting Ward. Pl. Dep. 24:15-25. Killian told Plaintiff that he had "never worked in a county where [the council] had [so] much influence." Pl. Dep. 26:7-9. Killian indicated to Plaintiff that County Council chairman Young was the councilman protecting Ward. Pl. Dep. 26:10-19. Killian told Plaintiff that Young had an email that Plaintiff "cussed too

much." Pl. Dep. 26:18-19. Plaintiff began to think he was not trusted in his position anymore. Pl. Dep. 30:8-9. An unnamed individual began asking Plaintiff about his "cussing" and saying that Plaintiff did not "treat[] people fairly." Pl. Dep. 30:14-16. This led Plaintiff to worry that he would be fired. Pl. Dep. 30:18-19; 31:23. Plaintiff deposed that unnamed individuals began "bringing up issues that in the handbook are grounds for being terminated." Pl. Dep. 32:13-14. Plaintiff was never disciplined by Killian or anyone else while employed by the County. Pl. Dep. 32:15-21.

On June 11, 2007, Plaintiff gave notice that he would resign his position as of July 5, 2007. Pl. Dep. Ex. 1. Plaintiff told Killian that he had been offered another job that he intended to take if nothing was done about Ward. Pl. Dep. 34:16-21. Plaintiff deposed that he did not seek Ward's termination, but sought some sort of change, such as a demotion. Pl. Dep. 34:18-21. Killian told Plaintiff he would get back to him. Pl. Dep.34:24-35:1.

On June 13, 2007, Tracey Willis, a consultant for Aiken County sent an email to the County Council members regarding Plaintiff's resignation. Willis Aff. at 1. The email expressed concern and indicated that there were improper activities taking place within the tax assessor's office including: 1) "[i]llegal appraising;" 2) "[i]ncompetence;" 3) employees being undependable and "excessive[ly] absent;" and 4) a "[l]ack of professionalism/support between the HR Director and Department Heads." Willis Aff. Attachment. Willis's email stated that Plaintiff was attempting to make changes to address these problems and encouraged the council to "speak with [Plaintiff] as to the exact, detailed reasons he [was] resigning." Willis Aff. Attachment. Willis's email further stated that Plaintiff's resignation would "increase[] the corrupt environment and give[] the appearance that certain people are 'untouchable.'" Willis Aff. Attachment. Willis was subsequently called to Killian's office to discuss her email. Willis Aff. at 1. At the meeting, Willis perceived that Killian

was not pleased with the email.  *Id.*  Killian indicated that the email might have done "more harm than good" for Plaintiff.  *Id.*  Killian then "discussed the fact that he had never worked for a county that had so much interference by the county council members."  *Id.*  Killian indicated that, in another situation, a department head had come forward with "proof that an employee was stealing," but that "an anonymous county council member had told [Killian] not to let the department head to discipline the employee. . . ."  *Id.*  Plaintiff was present during the meeting between Willis and Killian.  *Id.*

Willis contends in her affidavit that "Assessor, Human Resources Director, Administrator and Council Members all were aware of illegal appraising that was taking place within the Assessor Office Department."  *Id.*  Willis further indicates that it is her understanding that Plaintiff "gave documented evidence to both [Killian] and [Simmons] and was not allowed to terminate certain employees due to interference from one or more of the Aiken County Council Members."  *Id.*

When Plaintiff went back to Killian regarding whether Ward would be disciplined, Killian indicated that they could do something about Ward in three weeks.  Pl. Dep. 35:1-2.  Plaintiff, however, did not trust Killian and went through with his resignation on July 5, 2007.  Pl. Dep. 35:2-4.  Plaintiff testified that he "quit because [he] couldn't do [his] job and it seemed to [him] like [Killian] was not trying to help support [Plaintiff] to do [his] work."  Pl. Dep. 30:22-24.

On August 17, 2007, the County received a letter from Reed applying for the County tax assessor position.  Pl. Dep. Ex. 4.  At that time, Reed had no reason to believe that Ward's status at the Tax Assessor's Office had changed.  Pl. Dep. 35:14-22.  However, Reed intended to talk to Killian about the past issues with Ward to see if anything had changed.  Pl. Dep. 36:9-18.  Plaintiff was not hired to his old position.  *See* Pl. Dep. 36:22-25.

On August 12, 2008, Plaintiff wrote a letter to the County Council and administrator to bring

the council's attention to the improper assessment of a parcel of property. Pl. Resp., Ex. B. Plaintiff

indicates that a certain unnamed appraiser appraised the parcel at issue incorrectly and had a history

of making incorrect appraisals. *Id.* Plaintiff sought to have the property tax assessment corrected.

*Id.*

On January 19, 2009, Plaintiff again applied for the County tax assessor position. Pl. Dep.

Ex. 5. Reed acknowledged that he had had his differences with Killian in the past, but stated that

he felt he could do a good job. *Id.* Plaintiff intended to ask Killian if anything had changed with

regard to Ward, but had not considered whether he would take the job if no change had occurred.

Pl. Dep. 46:8-18. Plaintiff was not rehired to the tax assessor position in 2009. *See* Pl. Dep. 45:22-

46:19.

**DISCUSSION**

**I.      Standard**

Summary judgment should be granted "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Where the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there

is no "genuine issue for trial." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In ruling on a motion for summary judgment, a court must view the evidence in the light most

favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th

Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere

allegations or denials of the movant's pleading, but instead must "set forth specific facts"

demonstrating a genuine issue for trial. Fed. R. Civ. Pro. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

## II. First Amendment Claim

### A. Retaliation

The County contends that Plaintiff has no First Amendment claim based upon retaliatory employment action. Def. Mot. Summ. J. at 11. The court agrees.

"The government may not retaliate against a public employee who exercises her [or his] First Amendment right to speak out on a matter of public concern." *Love-Lane v. Martin*, 355 F.3d 766, 776 (4th Cir. 2004) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 573 (1968)). To establish a *prima facie* case of retaliation, Plaintiff must prove that: 1) he engaged in a protected act, 2) an adverse employment action was taken against him, and 3) there is a causal connection between the act and the adverse action. *See Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).

With regard to the first prong, not all speech by public employees is protected by the First Amendment. *Love-Lane*, 355 F.3d at 776. The Fourth Circuit has created the following test for determining whether, assuming retaliatory employment action has occurred, the retaliatory action violates a public employee's right to free speech: 1) "the speech must relate to a matter of public concern"; 2) "the employee's interest in First Amendment expression must outweigh the employer's

interest in efficient operation of the workplace"; and 3) "there must be a causal relationship between the protected speech and the retaliatory employment action; specifically, the protected speech must be a 'substantial factor' in the decision to take the allegedly retaliatory action." *Id.* (internal quotation marks and citation omitted).

"Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." *Urofsky v. Gilmore*, 216 F.3d 401, 406-07 (4th Cir. 2000). In *Connick v. Myers*, 461 U.S. 138, 147-48 (1968), the Supreme Court held that "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* at 147. "Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest" are not protected by the First Amendment because they are "not matters of public concern." *Love-Lane*, 355 F.3d at 776 (citing *Stroman v. Colleton County Sch. Dist.*, 981, F.2d 152, 155-56 (4th Cir. 1992). More recently, in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. The Supreme Court further stated: "[W]hile the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Id.* (citing *Connick*, 461 U.S. at 154).

Based upon the above case law, the court finds that Plaintiff's complaints about Ward's job performance are not protected by the First Amendment. Plaintiff had a responsibility in his role as

County tax assessor to ensure the accuracy of these assessments. Plaintiff complained about Ward to his supervisor, consistent with his job duties. Thus, these statement were made pursuant to Plaintiff's official duties as tax assessor, and not as a citizen for First Amendment purposes.

With regard to the second prong, the court finds that even if Plaintiff were engaging in protected speech when he complained about Ward, he was not subjected to any adverse employment action. The Supreme Court has indicated that anti-retaliation provisions only protect individuals from retaliation that produces an injury or harm. *Burlington N. & Santa Fe Rwy. v. White*, 548 U.S. 53, 67-68 (2006).[1] Plaintiff was not terminated or otherwise punished for his speech. *See* Pl. Dep. at 32. Plaintiff cannot turn the failure to discipline another employee into an adverse employment action by giving his employer an ultimatum that something be done about Ward or he would resign. *See Prince-Garrison v. Maryland Dept. Of Health and Mental Hygiene*, 317 F. App'x 351, 353 (4th Cir. 2009) (finding no adverse employment action when the plaintiff voluntarily resigned and voluntarily settled with employer). While Ward's actions may have affected Plaintiff's job, they did not entirely prevent him from performing his duties as is evidenced by Plaintiff's ability to continue as the tax assessor for months while Ward was allegedly making improper appraisals. There is simply no evidence that anyone sought to force Plaintiff to resign. Plaintiff's speculation that Killian and Young were attempting to find a way to terminate him is insufficient to survive summary judgment. *See Ennis*, 53 F.3d at 62. Because the court finds that Plaintiff has not engaged in protected speech and did not suffer any adverse employment action, the court does not reach the issue of causation.

---

[1] Retaliation claims under Title VII, § 1981, and § 1983 have the same requirements. *Gairola v. Virginia Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985) ("Under Title VII and either § 1981 or § 1983, the elements of the required prima facie case are the same.").

B.    Constructive Discharge

Plaintiff has not provided sufficient evidence to support a claim of constructive discharge. "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 244 (4th Cir. 1997)(internal citations omitted).   To establish a claim for constructive discharge, a plaintiff must show: 1) deliberateness of the employer's action, and 2) "intolerability of the working conditions." *Id.* "Deliberateness exists only if the actions complained of were intended by the employer as an effort to force the employee to quit." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). A plaintiff must provide "proof of the employer's specific intent to force an employee to leave." *Id.* Intolerability of working conditions is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Id.*  With regard to the first prong of a constructive discharge claim, there is no evidence that either Killian or Young took deliberate action to force Plaintiff to resign.  Plaintiff's speculation in this regard is not sufficient to survive summary judgment.

With regard to the second prong of a constructive discharge claim, Plaintiff's evidence is insufficient to demonstrate objectively intolerable working conditions. Plaintiff stated in his deposition that he "quit because [he] couldn't do [his] job and it seemed to [him] like [Killian] was not trying to help support [him] to do [his] work." Pl. Dep. at 30:22-24.  The fact that Plaintiff gave notice of his resignation almost one month in advance indicates that the conditions were not objectively intolerable.  Plaintiff began having problems with Ward as early as 2002 and specifically noted at his deposition that Ward was not following procedures in 2006, but Plaintiff did not resign until July 2007.  Moreover, less than two months after resigning, Plaintiff applied for his old

position, further indicating that Plaintiff's work conditions were not intolerable. Based upon the foregoing, the County's motion for summary judgment with regard to Plaintiff's First Amendment claim is granted.[2]

## III.    Civil Conspiracy Claim

To state a claim for civil conspiracy, Plaintiff must plead the following elements: 1) a combination of two or more persons; 2) joining for the purpose of injuring the plaintiff; and 3) causing special damage to the plaintiff. *Lawson v. S.C. Dept. of Corr.*, 532 S.E.2d 259, 261 (2000).

### A.    Combination

The Individual Defendants concede for the purposes of summary judgment that Killian's alleged failure to discipline Ward because of Young's intervention constitutes a combination of two

---

[2]         The court also finds that the County is not subject to suit under 42 U.S.C. § 1983. A county can only be held liable under 42 U.S.C. § 1983 "when execution of [the county's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [the constitutional violation]. . . ." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 522-23 (4th Cir. 2000) "A municipal policy would exist where a [county's] lawmakers have passed a law, or where a [county] official takes certain action and is the decisionmaker responsible for establishing final government policy respecting such activity." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1379-80 (4th Cir. 1991) (citing *Morrash v. Strobel*, 842 F.2d 64, 67 (4th Cir. 1987)).
         Killian is not a final policymaker for the County with regard to personnel decisions because he is subject to the authority of the County Council. *See* S.C. Code Section 4-9-10(b), 4-9-610, 4-9-620, and 4-9-630, 4-9-30(7). Young, although Chairman of the County Council is not by himself a final policy maker because he does not represent a majority of the County Council, which has approximately nine members (Willis Aff. Ex. 1). In addition, there is no evidence that Young was delegated final policymaking authority or that the entire council was protecting Ward. *See, e.g. Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997) (ruling that a city councilman, though a principal policymaker, was not by himself a final policymaker because final policymaking authority rested with the entire five-member city council and the mayor and there was no evidence to suggest that such power had been delegated to the councilman or that the council had adopted the councilman's views); *Scott-Harris v. City of Fall River*, 134 F.3d 427, 440 (1st Cir. 1997) (holding that a municipality may not be held liable under § 1983 where the basis of the claim is that two of nine municipal board members had discriminatory motives when voting on budget proposal); *Gupta v. Town of Brighton*, 9 F. Supp. 2d 242, 245-46 (W.D.N.Y. 1998)("even if it could be established that two of the Town Board members intended to discriminate against the plaintiff, that intent to discriminate can not be imputed to the Town, where the two members constituted a minority of the Town Board, and there are no allegations that the remaining members discriminated or intended to discriminate against the plaintiff.").

or more persons.  Def. Reply at 11.

    B.    <u>Intent</u>

The Individual Defendants contend that Plaintiff has failed to produce evidence of a purpose or intent to injure Plaintiff that is sufficient to survive summary judgment.  Def. Mot. Summ. J. at 23. The court agrees.

There is no evidence in the record to support a claim that either Killian or Young intended to harm Plaintiff or have him resign.  The evidence indicates only that Young sought to protect Ward.  Plaintiff's threat to resign does not transform the failure to discipline Ward into an intent to cause Plaintiff harm.  In fact, Killian told Plaintiff before he resigned that he could do something about Ward in three weeks, but Plaintiff, not trusting that anything would happen, resigned anyway. Plaintiff's speculation that Killian and Young were gathering evidence to fire him is mere speculation and is not sufficient to overcome the motion for summary judgment.  *See Ennis*, 53 F.3d at 62.  Plaintiff has not provided the court with sufficient evidence of an intent to harm Plaintiff to survive summary judgment.  *See Ellis v. Davidson*, 595 S.E.2d 817, 827 (S.C. Ct. App. 2004) (finding that the district court did not err in granting summary judgment with regard to a civil conspiracy claim when the plaintiff did not prove that the defendants purpose for taking certain actions was to injure the plaintiff); *Bivens v. Watkins*, 437 S.E.2d 132, 136 (S.C. Ct. App. 1993) (affirming trial court's finding that there was a "complete lack of evidence to establish that the purpose of the business of the parties was anything other than profit motivated" and was not intended to harm the plaintiff).

    C.    <u>Special Damages</u>

The Individual Defendants contend that Plaintiff has not suffered any damages at all because

he voluntarily resigned and was not constructively discharged. Def. Mot. Summ. J. at 26; Def. Reply at 15. The court agrees. Because Plaintiff voluntarily resigned, there is no evidence that Plaintiff sustained any damages as a result of the alleged actions of the Individual Defendants.

## CONCLUSION

Defendants' Motion for Summary Judgment (Entry 24) is **granted**.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour
The Honorable Margaret B. Seymour
United States District Judge

October 21, 2010
Columbia, South Carolina